Nott, J.,
dissenting:
Some future philosophic writer, commenting upon the civilization of our time, will probably say that “ during the latter half of the nineteenth century the American courts went wild on what was called the negotiability of bonds and debentures and govern m ent securities, carrying the doctrine, indeed, to such extremes that their decisions furnished a safe basis upon which burglars or bank robbers might do business.” £‘ The business,” he will add, “ had its personal risks, but from a financial point of view was safe, being profitable; and as men will al ways be found willing to take great risks for great rewards, the business of bank robbery was carried in a short time to a degree of perfection which produced some very astonishing results, one of which was that a robber was substantially tree to sell his plunder to anybody except the true owner.”
There are four cases now before the court nominally against the government, really against the Manhattan Bank, all growing out of the Manhattan Bank robbery; and the question which they present is whether the Manhattan Bank, from whom the bonds were stolen, or the adverse claimants, who bought them directly or indirectly from the robbers, have the better title. I did not sit in the previous cases of Morgan and the Manhattan Bank (18 C. Cls. R., 386), which have just been reversed by the Supreme Court (113 U. S. R., 476), and do not assume to have as thorough a knowledge of the latter decision as if I had; but I perceive that the point presented by these cases was not positively ruled upon by the court above, and I deem it one which should not be taken stare decisis by implication.
*422 The facts presented by one of these cases are substantially the facts of each.
Messrs. Morton, Bose & Co., of London, bought a bond which is said to be the bond now in suit. The bond which they thought they were buying is not the bond upon which they now declare. The thing which they assumed to buy, and supposed they were buying, was bond No. 202887, a bond which had been called and which the government stood ready to pay. But when they sent this bond to the Treasury, it appeared that the veritable bond No. 202887 had already been presented and paid, and that this purchase of theirs, whatever it might be, was not bond No. 202887.
At this juncture somebody bethought himself of buying a magnifying glass, and under its influence it appeared that the number of the bond had been changed by the partial erasure and alteration of one figure; that is to say, it became plain that the original number was 202897; but at the same time it likewise became plain that Messrs. Morton, Bose & Co., while paying their money for bond No. 202887, had in fact never so much as had that bond in their possession. To maintain an action on the bond which they did not buy, but did get, they have to file, as it were, a bill in equity to correct the instrument declared upon; that is to sa.y, they have to show that it is not what it now purports to be, bond 202887, and that its true number before the alteration was No. 202897.
If some poor farmer innocently and ignorantly had bought a horse of the same thief who sold this bond to Messrs. Morton, Bose & Co., the law would hold him accountable, and courts would tell him that he who deals with a stranger deals at his own risk, and that the vendor can give no better title to the property than he has himself. The rule which excepts mercantile paper from the operation of this principle of law cannot be gainsaid, but the application of it in this case carries it to a perilous extreme.
When Messrs. Morton, Bose & Co. bought this bond, whatever its number was or seemed to be, they knew, as all the world knew, that bonds of that issue and amount had been stolen. They also knew, as all the world knew, that the one ear-mark, the one tangible, perceptible thing which individualized the bond and distinguished it from all other bonds of the series was its number. It is said that the number had been so *423 skillfully altered tba-t the erasure could only be detected by the aid of a magnifying glass. I grant this. But I hold that when Messrs. Morton, Bose & Co. bought a $1,000 bond in their own counting-house from a stranger whom they did not know, whom they had never seen before and never expected to see again, they were bound to use a magnifying glass or bear the consequences of their own recklessness.
It is the duty of an inferior tribunal to carry out fully and in good faith the rulings of its appellate court. But the decision in Morgan’s Case is not one which should be extended by so much as a hair’s breadth; and the hair’s breadth required by this case will put every banker in the world upon the side of the thief.
Davis, J., did not sit in this case and took no part in the decision.